Good morning, Your Honors. So, the real issue is Find out your appearance. I'm sorry. Michael Berger, from the Losses of Michael J. Berger, on behalf of the appellant Joseph Ellison. Thank you. So, this is a case about denial of discharge, and the judge has tried to cloak his opinion saying, well, it's based on the totality of circumstances. And that was enough for the case. But I submit that if some of these circumstances are improper to be considered in the first place, then that poisons the well. And when you look at each individual circumstance, you see that they're all improper. To give an analogy first, if they denied my client's discharge for six reasons, and one of them was that he was Persian and Persian steel, that wouldn't be appropriate. If they denied his discharge for seven reasons, and one of them was because he was black, that wouldn't be appropriate. You couldn't get around it and say, well, under the totality of the circumstances, there's still something there. It's a strange case, because everyone knows that there's a presumption that 727 should be interpreted in favor of the debtor. People are entitled to get a discharge if they're the onanist but unfortunate debtor. And my client was careful. He hired an attorney, David Hagan, who does bankruptcy. And despite the dispute about this, we showed from the advice of counsel. So in order to try and convince you that this should be overturned, I need to focus on the different factors that Judge Kwan relied on. The first one that I found really offensive was that my client consulted with an asset protection attorney. The evidence is pretty clear. He consulted with this guy, but he never followed any of his advice. He fired him, and he didn't do anything. So now I guess it's a crime to consult. He paid him. I understand he paid him. He paid him, and then he reversed the charge with American Express. He tried to reverse the charge. Undisputed, that he didn't form a trust, he didn't transfer any assets. To me, like, when consulting with an attorney becomes an indication that your discharge should be denied, that's a bridge too far. Well, I would agree if that were the only thing. Well, so let me look at all of them. This is really the key to the case. In other words, they've turned this into five factors, seven factors, ten factors, depending on how you count it. And they'll say, oh, well, considering the totality of the circumstances. Well, hold on. Just so we're putting this in the right frame of mind, if someone's investigating a bank robbery case, and the suspect loved the movie Heat, which involved a lot of bank robberies in Los Angeles. Now, that alone may not be enough, but surely that could be used as evidence that this guy was planning a bank robbery, the fact that he was watching the movie Heat. I would actually disagree with that. To me, that's a First Amendment thing. I like the movie Heat, and I don't want to be accused of a crime because of that. Okay, it's almost as how to get to book, how to rob a bank. You're getting closer, right? You're getting closer. Like, because how to rob a bank, it's getting more suspicious. Right. But this guy just met with somebody, you know? It's like, you could say that meeting with a bankruptcy attorney itself is evidence of some kind of fraud, because a bankruptcy attorney is going to give you advice about how to use your exemptions and how to protect your assets. And maybe I'll roll into that for the next one, but just sticking with this for a minute, you know, maybe it was seen as Judge Kwan is a bad idea, so I guess in retrospect, it was a bad idea to meet this guy. But it was some guy, innocent, who's trying to figure out what to do. He got some advice that he didn't follow. You know, you could search his computer and see what he looked up on Google. You could get, like, a little bit crazy. I'm going to say that that's not a proper factor. To me, that's not something that should be part of the totality of the circumstances. It's something that never should have been considered. And interestingly, they're all like that. So, for example, this prepayment on the mortgage, which turns out to be five months, he says was based on his advice of counsel. And there's a lot of law that if you get advice of counsel and you follow it in good faith, that's reasonable. He said, hey, he wanted to make sure his family had a place to live in. Was advice of counsel asserted as a defense in the underlying proceeding? It absolutely was. And I put this in the brief because there's some dispute about this. We quoted from the testimony where he said that he relied on his counsel's advice. And I can, you know, bring you back to those pages. And unfortunately, David Hagen didn't seem to want to stress this enough. Maybe he didn't want to put the highlight on him, but he did have testimony when they And he said that the whole time he was dealing with his bankruptcy counsel. Let me maybe find that for you, Your Honors. Even if your client testified to that, does the bankruptcy judge have to believe that is the reason? The bankruptcy judge is free to disbelieve any testimony that he wants. I'm just saying there was evidence of reliance on advice of counsel. And then let me kind of hit the different factors. So one is, oh, my God, you consulted with an asset protection attorney. Another one was, oh, my God, you took advantage of an exemption. There was evidence that $6,500 was transferred to an IRA account prior to the bankruptcy. Again, there's nothing wrong with using your exemptions. This is like a tax deduction. If you decided that you're going to give twice as much charity this year to get some benefit and then not next year, that's legal. And if someone had a problem with it and wanted to say this was somehow wrong, a trustee has a right to go after a preferential payment. But that's not what happened. Instead, because of this $6,500 payment for an IRA, then they said, okay, now your discharge is denied. And again, they said, well, it's not just because of that totality of the circumstances. Sometimes circumstances are turned on their head. So somehow taking money from your home to refinance was found to be an indicia of why we should deny the discharge. There was something wrong with that. But it really is the exact wrong analysis. You have an exemption in your home. That's the biggest exemption you've got. So sometimes you might have someone buy real property to take advantage of that exemption. In this case, he needed the money to live on, so he borrowed money from the home. He made it easier for creditors to collect. Because if he has $100,000 equity in the home, it's exempt. If he takes it out and he has it in cash, and he did have some of it in cash when he filed, then it's not exempt. And yet Judge Kwan relied on this refinance and said, oh, that's another part of the totality of circumstances that shows fraud to me. He repaid some loans to other people before the arbitration award was entered. I mean, I've seen real fraud cases. People send the money offshore, and they're just hiding it. Or they put it in some sort of Cayman Islands trust, and they refuse to pay people. They transfer it to their mother, their father, their sister. They lie in their schedules. None of that happened in this case. Why did he do that? Why did he repay with the pending bankruptcy? So the repayment to some creditors, each one had a different reason. The ones that he repaid to friends presumably was because he wanted to be able to pay them. He had some questions if he could ever repay them later on. Why were those creditors, in a sense, favored over other creditors? I can only infer because the record, you know, doesn't give you the answer.  But isn't that the problem? Is that really his call when you want to declare bankruptcy, that he gets to pick which creditor over which creditor? Or isn't that the bankruptcy court's decision? So this is actually a great point. Again, for what it's worth, I'm a certified specialist in bankruptcy law, and I'm very familiar with this kind of stuff. Preferences need to be listed. That's the first thing. And every one was listed. His schedules were truthful. Nobody was claiming there was anything untruthful. There were no transfers after the bankruptcy was filed. These preferences were disclosed. And yes, a trustee could have pursued it. In every Chapter 7, they appoint a trustee, and if he thinks there's something wrong, he could go after it. So let's say you paid $10,000 to your mom. He might say, well, that's not right, and I'm going to recover the money. And that would be proper. But it's not a grounds for denial of discharge. And again, here we got sort of an argument in the briefs. I quoted cases where it says that a mere preference is not evidence of fraudulent intent, and they said, well, that case says a preference, and this was more than one. So I guess you can argue about, like, what if you paid two friends? Or what if you paid your mortgage and two friends, or your mortgage and two friends in the IRA? But there was nothing really wrong that was done here. At the very least, the Court must see that it's a closer case. There are cases of bankruptcy fraud that are super clear. You know, the guy is just hiding money. And here, everything indicates — It has to be, though. The law doesn't require that. The issue is intent, is it not? The issue is intent. And I think what you see from the intent here is he goes to the asset protection attorney. He decides not to follow his advice. He makes a transfer to this clown putsch, which is another one of those factors that the judge cited. This was a company of his. And that looks bad to me, because why are you transferring money out of your name to your company? But then five days later, he transfers it back. And again, the testimony was on the advice of counsel. But again, I understand that's his side of the story. Well, that's an undisputed fact. It's an agreed fact, not his side of the story, that he transferred the money and that five days later he transferred it back. But the next thing you said, he said he did it on advice of counsel. Okay. So the question is — According to whom? Okay. According to him. Okay. He did it on advice of counsel. But let's say that's wrong. Let's say he just realized he made a mistake. Either way, a transfer that you make and then you undo five days later isn't grounds to support a non-discharge, a denial of discharge. But again, the problem I ran into — But that's — that standing alone is not. Your argument seems to be, well, each one of these things standing alone would not establish intent. And I thought that the finding was that all these things together — You're exactly right about what the finding was. And I'm going to reserve a little time for reply. My point is that not only is each one alone not sufficient, but these aren't factors that should even be considered. These aren't evidence of any sort of fraudulent intent. Don't we have to find clear error here? Yes, you do. Correct. If it's a close call, if it's a matter of judgment, whatever, you've got to defer to the bankruptcy court. Right. And you think this constitutes — what you're describing does constitutes clear error. I do think that. And I'm trying to convince you, and I'm going to save four minutes to try to convince you later. The client wants us to hold. Okay. Thank you. Thank you. Good morning. Stefan Perovich for the appellees, the J.P. Morgan entities. What we have here is a case where discharge was denied because the bankruptcy judge under Section 727 determined that the debtor acted or made transfers with the intent to hinder or delay creditors. There was a mention of fraud frequently previously. It's hinder or delay or defraud. There's an or there. It doesn't have to be fraud. You're not hanging your hat on fraud here. It's hinder or delay. It's hinder or delay, yes. And that's what the bankruptcy judge determined, and that's what the bankruptcy appellate panel also affirmed. And as the court has already pointed out, when the court is determining, when the trial court is determining intent, the standard is clear error. And there is no clear error here. The debtors have not been able to point to any determination by the trial judge that was illogical, implausible, or without support in the record. That's just not here. What the trial judge did here is applied the correct test, the totality of the circumstances test, and looked at multiple transfers made by this debtor in order to determine whether some of those transfers were made with the intent to hinder or delay creditors. And the circumstances and the transfers that are at issue here, which have already been discussed, is the refinancing and then prepayment of a mortgage. And why should a judge be able to look at that? Because, as the debtor argues, it's a mere preference, right? The prepayment of a mortgage can qualify as a mere preference. But when you look at it, what happened here, the debtor had an asset. They had a house. And what the debtor did is they drew down the principle, I'm sorry, not the principle, but the equity. So they first refinanced the house to draw down an asset that could be attached, that could be levied upon by a creditor, and then did things with the money, and then later prepaid the mortgage. They didn't pay down the principle. They prepaid the mortgage. So that's a transaction here that can be looked at to determine why was the debtor doing that. Was the debtor doing that just because they had $50,000 laying around and they wanted to prepay their mortgage? It's reasonable for the trial court to look at that and say, well, no, no, no. But they drew down the principle to keep that asset away from creditors, and then they prepaid the mortgage to benefit the debtor. The court also looked at what happened with these asset transfers. The debtor here moved funds from an account in his name to an account that wasn't merely his wife's account, but was his wife's law firm's account. That hinders or delays creditors. The debtor argues that that's a transaction that shouldn't be looked at here because all of these funds or all of these accounts, the debtor has a community property interest in those funds. But in order for me as a creditor to levy and to gain access to the debtor's wife's law firm's account, I have to first get a judgment against the debtor. I have to send a notice of levy to a bank which says this is the debtor's name and this is his social security number. Please give me all of his assets. The bank is going to come back and say, no, we don't have any assets belonging to this debtor. I then have to figure out that these funds went to his wife's account. I have to trace those funds. I have to do that through a subpoena or a judgment debtor examination. I then have to get an order or some ability to levy on her account. These are actions taken with the intent to hinder or delay creditors. It makes a creditor do ten different steps in order to try to attach those accounts. So it's absolutely appropriate for the court that's evaluating the totality of the circumstances to evaluate each of these transfers and to look, why did the debtor do them? Does it make sense that the debtor did them with the intent to hinder and delay? And that's what the court determined here. The debtor also made transfers to pay down debts owed to his friends. The debtor moved assets from different accounts. The debtor did seek the advice of an asset specialist, an asset protection law firm. And the question is, does that alone mean that the debtor's discharge should be denied? Under certain circumstances, no. But is that a proper circumstance for the court to review in making its determination of intent? Absolutely. If somebody's going to rob a bank, is it worth noting whether that person seeks the advice of a criminal attorney three days before doing it? Absolutely. If somebody's going to commit a murder, do they call their criminal attorney two days before to look at the standard? That may establish the intent or whether that was premeditated. We're looking at intent here. It's a totality of the circumstances analysis. So it's appropriate for the trial court to weigh that evidence and to fact gather. And it's also inappropriate for the debtor to ask this court to redo the trial, to effectively redo and re-evaluate all the evidence and to re-evaluate all of the judgments that the trial court made. Because what's the purpose of the trial then? Why not just have the discharge trial before the Ninth Circuit? And I don't think that that's something that the Ninth Circuit would like to take up on an everyday basis. That's why the standard here is clear error. And it's not present here. The trial judge in a 40-plus page opinion established exactly why the rulings were made, and the BAPA upheld that. No? No. Don't appear to be any questions. Yeah. I don't think we have anything for you. I will take the court's advice and sit down. All right. Thank you. Thank you. So hinder and delay is what the court found. And I think it's important to recognize that bankruptcy in every case is intended to hinder and delay creditors. That's what it does. It stops people from enforcing judgments. It stops cases from going to trial. So no one would say that the fact that you filed bankruptcy itself would be enough to deny the discharge. You've got to have something more. And the somethings more that they had really don't add up to anything. There was an old saying like nothing plus nothing equals nothing. If all you had was I watched 10 bank robbery movies, it wouldn't be enough. If you've got like a video of me, you know, entering the bank and got my gun, then you've got something and you really prove it. This seems like a case where they didn't really give this presumption to the debtor, but they weaved together these disparate factors and turned it into something that really isn't there. Again, I don't really understand the analysis on how borrowing money on your home somehow is an indicia of fraud. We're converting exempt property to non-exempt property. None of the factors by themselves add up to anything. And yet somehow when you add them all up, they say now, you know, we've gotten proof. What about during the hearing, sometimes his testimony was not exactly running north and south, let's just say. So he seemed to be kind of all over the place and saying he was like freaking out about something. He asked some pretty simple questions about why you engaged in this transaction. Couldn't the district, couldn't the bankruptcy judge just look at his answers and just say I don't believe this guy? Certainly. And I think that also kind of relates to this question of did he make any sort of admission. It is proper to look at what the debtor said. I don't have any problem considering that factor. Like let's imagine there were ten things that the court considered in making its decision, and five of them were improper like, you know, national origin, race, religion. But there's nothing like that in this case. And the other were proper. There's nothing like that in this case. Well, I think what we have like that is talking to an attorney, you know, to get advice. I think using an exemption that you're entitled to. I have often told people how to try and use their exemptions. Maybe somebody needs to buy a car in order to get a lower payment in Chapter 13. He talks about crossing the line between bankruptcy planning and, you know, violating this 727. But if something is on the right side of the line, it's not any evidence at all. Because I'm asking that the court remand back to Judge Kwan and say, hey, you know, you considered some factors that we think were improper and consider it again. And he might consider it the same way. Maybe he would say, well, look, this debtor made statements that I consider to be an admission, and therefore I'm going to deny his discharge based on that. If he is denying discharge based on a proper factor or the sum of proper factors, then I don't really have much to say. But if he is considering things that are improper, I think that's a problem. I wanted to just cite back to one of my briefs. I know the court's already read the briefs, but in the reply brief at page 15, we do highlight the evidence about consulting with his attorney. He was asked specifically about this prepaying the mortgage. And, again, we heard in a respondent's argument that this prepaying the mortgage is, you know, somehow improper. And it says, question, and the decision to make that, to make the six-month prepayment, did you consult with anyone to make that to make the five-month prepayment? Answer, I was consulting with my current counsel about the entire bankruptcy proceeding, yes. I suppose the judge could not believe that, but everything sounds reasonable to me. He had the same attorney, David Hagan, who, like myself, is very experienced in bankruptcy. And the fact that he reversed this clown push payment also suggests to me, someone told him you did something wrong and you need to undo it. And I think all that evidence helps my client in showing that these individual things don't really amount to a factor for which his discharge should be denied. Counsel, before you sit down, I'd like to sort of have some facts here that are in the record. Yes, Your Honor. As I understand it, the majority, close to 90% of the unsecured debt that your client had was about $790,000 to J.P. Morgan and $45,000 to this attorney, Shustak, correct? Correct, Your Honor. Okay. And if we were to, if all of the steps that your client took to allegedly hinder or delay were unwound, what would that produce in terms of assets within the bankruptcy estate? I think I saw the number $250,000. So I'm going to come up with $13,000. I've got the IRA transactions, and that was $6,500 each. So that could be unwound. You would then, instead of having an exempt IRA, you'd have a non-exempt thing. If you unwound the ---- What about the payments that he made on the mortgage? Well, I'm trying to think how you would unwind it. Let's imagine ---- Maybe that was a poor choice of words. Let's just take the value of those items that were identified to support, hinder, or delay. You know ---- I read somewhere it was about $250,000. I think it's a less number, and I don't really have a number in mind, but certainly far less than, you know, the amount of the judges we're talking about. I guess what ---- Okay. My final question. My final question. How much was left in the estate? I mean, what was in the estate to satisfy the unsecured creditors? I'm sorry. I don't know that answer. I'd have to try and figure it out. I'm not prepared to have that answer. But I would maybe if you allow me to answer a little further. The job of the trustee is to find and liquidate assets for the benefit of creditors. There was a trustee in this case. And if the trustee felt that a transfer was improper, the trustee could have, should have, would have done something to unwind it. There's many cases where the trustee is disappointed. You've already made that point. So I don't think that the trustee felt there was anything improper, that there was a wrong transfer that he should try and recover. All right. Thank you very much, counsel. Thank you both for your argument. This matters.
judges: Schroeder, Owens, Christensen